## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>EVIDENT ID INC. and MRI SOFTWARE LLC d/b/a TRUSTED EMPLOYEES,<br><br>　　　　　　　　Defendants. | Civil Action No.: 2:22-cv-00214<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff John Doe ("Plaintiff"), by and through the undersigned counsel, hereby brings this action against defendants Evident ID Inc. ("Evident"), and MRI Software LLC d/b/a Trusted Employees ("Trusted") (both collectively, "Defendants") and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

### NATURE OF THE ACTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq*. Plaintiff was denied multiple employment opportunities and suffered termination of one employment position, among other damages, because Defendants each sold consumer report(s) (alternatively referred to as a "background report") to third parties inaccurately and misleadingly indicating that Plaintiff was charged and found guilty of certain felonies.

2. Defendants' reporting of inaccurate information is not accidental, nor a result of simple negligence, but a result of deliberately designed policies and procedures.

3. Therefore, each Defendants' reporting of the inaccurate and materially misleading information was caused by each Defendants' failures to devise, implement, and follow reasonable

1

procedures to ensure the maximum possible accuracy of the information contained on Plaintiff's consumer report(s).

4. As a result, Plaintiff suffered substantial actual damages, and, accordingly, is entitled to damages.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

6. Each Defendant regularly transacts business within this judicial district. Each Defendant regularly directs business at this judicial district. Each Defendant voluntarily and purposefully availed itself of the protections of this judicial district, such that personal jurisdiction is established.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8. Plaintiff is a natural person who resides in Kanawha County, West Virginia. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant Evident is regularly engaged in the business of maintaining and compiling consumer information to include in background checks and generate employment-purposed consumer reports that it sells to third parties. Therefore, Evident is both a "consumer reporting agency" and a "reseller" as defined by 15 U.S.C. §§ 1681a(f), 1681a(u).

10. Evident is a Delaware Corporation and maintains a principal place of business at 945 E. Paces Ferry Road NE, Suite 1700, Atlanta, GA, 30326. Evident can be served through its registered agent, David Thomas, located at 945 E. Paces Ferry Road NE, Suite 1700, Atlanta, GA, 30326.

11. Defendant Trusted is regularly engaged in the business of maintaining and compiling consumer information to include in background checks and generate employment-purposed consumer reports that it sells to third parties. Therefore, Trusted is both a "consumer reporting agency" and a "reseller" as defined by 15 U.S.C. §§ 1681a(f), 1681a(u).

12. Trusted maintains a principal place of business at 28925 Fountain Parkway, Solon, Ohio, 44139, and can be served through its registered agent, National Registered Agents, Inc., located at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

13. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

FACTUAL ALLEGATIONS

A. The FCRA

14. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

15. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus"): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

16. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

**B. Defendants' Reporting Harms Plaintiff**

17. Plaintiff resides with his 13-year-old son in South Charleston, a city in Kanawha County, West Virginia, where he resided all his life. Plaintiff's son's mom had passed in February 2006, which made Plaintiff the sole provider and caretaker for his 13-year-old son.

18. In 2012, Plaintiff graduated from West Virginia State University with an associate's degree in accounting. For a time, Plaintiff worked as a general manger at a restaurant.

19. In or around 2016, following a misunderstanding and a few bad decisions, Plaintiff was charged with various criminal acts, including three counts of grand larceny, a felony.

20. Plaintiff eventually entered into a plea deal following a review of the extenuating circumstances in Plaintiff's life. In large part, the plea deal consisted of Plaintiff's agreement to participate in a drug rehabilitation program in exchange for a dismissal of all remaining felony charges. The plea deal was finalized and effectuated on or about September 25, 2019, with the assistance of one David Ford, a Kanawah County public defender (the "Plea Deal"). As a result, Plaintiff had never pled guilty to, nor was he ever adjudicated to be guilty of, any felonies.

21. Indeed, a recent document obtained from the West Virginia State Police Information Services Center – Criminal Records Section provided a so-called rapsheet concerning Plaintiff.

22. The rapsheet reflected that two counts of "GRAND LARCENY" were dismissed on September 25, 2019.

23. Some years later, Plaintiff secured a job working for Trojan Landing Marine Inc. ("Trojan"), a company that sells, maintains, and services, boats. Plaintiff sold boats for Trojan for approximately two years.

24. While at Trojan, and at the height of the Covid-19 pandemic, Plaintiff received a message from a contact that the contact had contracted Covid-19. Accordingly, Plaintiff was tested for Covid-19, and Plaintiff waited for the return of either a "positive" or "negative" indication.

25. Plaintiff also immediately informed his superior at Trojan that he could not return to work while his Covid-19 test was outstanding, and that he would return to work just as soon as he can confirm a "negative" Covid-19 test result.

26. However, when Plaintiff returned to work, he was informed that he was replaced and no longer had a job at Trojan.

27. Plaintiff survived on government unemployment for a while, as he searched for other job opportunities.

28. Plaintiff particularly wanted to secure a stable, career-oriented job that would provide the job security and financial consistency necessary to support himself and his young son.

29. However, as iterated *infra*, Plaintiff soon realized that his history of criminal charges was a serious impediment to obtaining gainful employment of the kind he required. Therefore, in addition to searching for stable, long-term employment opportunities, Plaintiff also applied to a variety of short-term staffing companies to make ends meet.

30. Unfortunately for Plaintiff, inaccurate consumer reports from multiple consumer reporting agencies, such as Defendants here, interfered to block Plaintiff from securing gainful employment.

31. As detailed *infra*, those consumer reporting agencies were reporting outdated information that often indicated or misleadingly conveyed to employers that Plaintiff had been found guilty of a felony.

32. As it happens, during the years of 2020 and 2021, and until on or about February 1, 2022, Plaintiff was himself misinformed about the exact status of the felonies he had been charged with. Specifically, although Plaintiff had completed a drug diversion program which completion ordained that his felonies be dismissed, he was nevertheless under the mistaken impression that he was required to return to court and stand before a judge before such felonies would be formally dismissed.

33. Therefore, in the instances when Plaintiff viewed the inaccurate consumer reports provided time and again in relation to his employment application and which resulted in employment denials, Plaintiff misapprehended the egregiousness of the inaccuracies and the depth of what has become an unfolding tragedy; Plaintiff mistakenly believed that the consumer reports were only mildly inaccurate or misleading.

34. Instead, unbeknownst to Plaintiff, Plaintiff was not required to return to court and all felony charges were actually dismissed on or about September 25, 2019.

35. Defendants' inaccurate and misleading consumer reports misled Plaintiff into believing that his felony charges had not yet been dismissed, which misimpression itself caused further damages.

36. Specifically, in or around November 2021, Plaintiff began the process of submitting an employment application to Total Quality Logistics, LLC ("TQL"), a trucking, logistics, and supply chain company.

37. The applied-for position offered the promise of a great and stable career-minded job that started with a six-months paid training program, a base salary of $40,000 to $50,000 dollars in addition to uncapped commission potential, and a full benefits package that included medical, dental, and vision coverage, a 401k contribution match, tuition reimbursements, and more.

38. The QTL position was exactly the kind of job opportunity Plaintiff had been searching for. Plaintiff communicated directly with one Cole Glover ("Cole"), a TQL Sales Recruiter.

39. During Plaintiff's communications with Cole regarding the TQL open position, Plaintiff was reliably informed that the job was his for the taking: if he submitted a valid application, he would secure the job.

40. Cole emailed to Plaintiff a detailed job description and instructions how to apply therefore.

41. However, Plaintiff's communication with another QTL representatives gave him pause, and Plaintiff was deterred from submitted his application to QTL. As Plaintiff described some weeks later, on or about December 12, 2021, to Cole in an email explaining his failure to apply that related to the outstanding felonies on his consumer reports:

> I actually spoke to one of your colleagues about this and told him that the issues will be removed when I am able to afford it. He politely wrote me off and told me there was no chance until this happened. I am going to take care of it probably sometime this week. My issue is that I am not familiar with the process and have been told that it can take months. I am writing you simply because, although our conversation was brief I got the sense that you may be a more openminded and understanding individual, and could possibly, if it's within your power, be able to help me out with this as far as the application process goes.

42. Cole responded to Plaintiff's email the next day, on or about December 13, 2021. "I'll happily look into it and see what we can do," Cole said. "You mentioned having the issues removed, could you let me know when that happens?," Cole inquired.

43. As of the date of the filing of the instant action, Plaintiff is still unable to satisfactorily answer Cole's inquiry, and the coveted QTL job remains out of reach.

44. Defendants' respective inaccurate reporting have caused Plaintiff to be deterred from submitting an application to QTL, which application would have almost certainly been accepted by QTL ensuring that Plaintiff obtains a high-paying career-oriented job with sure potential for growth.

45. Instead, Plaintiff was, and is, forced to shop around for various minimum-wage and part-time jobs for which he is overqualified.

C. **Further Allegations Specific to Evident's Inaccurate Reporting**

*A&B's Adverse Action*

46. In early January, 2022, Plaintiff submitted a job application to Above & Beyond Retail Services ("A&B"), a firm that services retail stores' visual displays and fixtures and product sets.

47. On or about January 8, 2022, Plaintiff received an email from "Wonolo Background Checks" concerning his A&B application with the subject line "[y]our job at Above & Beyond Retail Services was canceled" (the "Cancelation Email").

48. Wonolo is a platform that facilitates and streamlines the process of finding employment, and connects job seekers with employers. Wonolo also conducts background checks for its job seeking users.

49. The Cancelation Email informed Plaintiff that "[y]our job on Sunday, Jan 09 at Above & Beyond Retail Services was canceled because your background check is still being

processed." To reiterate, Plaintiff received the Cancelation Email on the preceding day, on January 8, 2022.

50. Plaintiff received a further email from "Wonolo Background Checks" on or about February 16, 2022. This email, in reference to Plaintiff's "request to participate on our platform" concerning additional job opportunities, expressed that "we are unable to grant you access at this time" because of certain "information received from a consumer reporting agency identified below" (the "Adverse Action Notice").

51. The Adverse Action Notice identified defendant Evident as the consumer reporting agency which provided the information used in its decision to deny Plaintiff access to its platform.

52. Upon information and belief, Evident provided a consumer report to Wonolo, which Wonolo used in its determination to cancel and deny Plaintiff's job application to A&B.

53. Soon after, Plaintiff received a consumer report produced by Evident dated February 7, 2022 (the Evident Report").

54. The single-page Evident Report reflected that a "County Criminal Search" found "1 result." That "result" was of *five* purported "FELONY" charges of "Grand Larceny" filed in the Circuit Court of Kanawah County, West Virginia. The Evident Report reflected a disposition of "PLACED ON DEFERRAL PROGRAM," which disposition was dated February 8, 2017.

55. Plaintiff was only ever charged for *three*, not five, grand larceny charges in 2017.

56. Worse still, upon information and belief, two of the grand larceny charges were dropped within days of the charges.

57. Further, Plaintiff entered a Plea Deal that caused the dismissal of the last remaining grand larceny felony charge.

58. Put simply, Evident reported in the Evident Report an erroneous grand larceny disposition that was over two-years out-of-date.

59. Among other failings, Evident failed to maintain reasonable procedures to ensure that the out-of-date disposition was brought up to date, or to ensure that purported felonies are accurately counted and not erroneously inflated.

60. The Evident Report's inaccurate information was a direct and substantial cause of A&B's denial of Plaintiff's employment application, and further caused Plaintiff substantial economic and emotional damages.

### D. Further Allegations Specific to Trusted's Inaccurate Reporting

*Apollo's Adverse Action*

61. In or around January 31, 2022, Plaintiff submitted a job application to Apollo Retail Specialists, LLC ("Apollo"), a company that hires part-time retail employees as support staff to various retailers.

62. Apollo bills itself as an "a full-service retail merchandising support company" that provides "specialized retail merchandising teams, all consisting of W-2 employees."[1]

63. Upon information and belief, the Apollo job Plaintiff applied for offered $20.00 per hour.

64. On or about February 4, 2022, Plaintiff received an email from Apollo concerning his Apollo application (the "Apollo Denial Email").

65. The Apollo Denial Email to Plaintiff informed that "you do not meet our screening requirements and you are ineligible for employment with Apollo."

---

[1] *See* APOLLO, https://www.apolloretail.com (last visited on March 21, 2022).

66. Attached to the Apollo Denial Email was an adverse action letter. The letter explained that Apollo has obtained a copy of a consumer report from Trusted concerning Plaintiff, which Apollo had used to deny Plaintiff's employment application.

67. Also attached to the Apollo Denial Email was the Trusted consumer report used by Apollo to deny Plaintiff's employment application, which was dated January 31, 2022 (the "Trusted Report").

68. The Trusted Report accurately reported multiple felony charges as "DISMISSED," but, egregiously, indicated two felony charges as having a disposition of "CONVICTED."

69. Specifically, the Trusted Report indicated two felony-level "offenses" of "ENTERING WITHOUT BREAKING," charged in Kanawaha County, West Virginia, as maintaining a "Disposition" of "CONVICTED" on February 14, 2017.

70. Needless to say, the Trusted Report was inaccurate because Plaintiff had never pled guilty to, nor was he ever adjudicated to be guilty of, any felonies. In particular, the last of the remaining ENTERING WITHOUT BREAKING felony charges was, in fact, dismissed as part of the Plea Deal.

71. Despite the Apollo Denial Email, Apollo seemed to proceed with the process of hiring Plaintiff. Plaintiff interviewed for the position, received a welcome email, and, on February 9, 2022, received an email – bearing the subject line, "Work available 2/13-2/19 – APOLLO" – that contained a comprehensive work schedule including "shifts [that are] 8-10 hour days" long.

72. Plaintiff was fully on-boarded, and eagerly awaited his first work shift at Apollo.

73. To Plaintiff great dismay and surprise, Plaintiff soon received a letter dated February 9, 2022, bearing the subject line: "RE: In-Voluntary Termination" (the "Apollo Termination Letter").

74. The Apollo Termination Letter informed Plaintiff that "your employment with Apollo Retail Specialists has been terminated as of February 9, 2022." The Apollo Termination Letter further advised that,

> [t]hrough ADP, our payroll provider, you may continue to access your existing pay statements and W-2 forms 24 hours a day, 7 days a week for up to three years from the date your last statement was issued.

75. The Trusted Report's inaccurate information was a direct and substantial cause of Apollo's termination of Plaintiff's employment just before it was set to begin, and further caused Plaintiff substantial economic and emotional damages.

### E. Plaintiff Suffered Additional Damages

76. Despite knowing that its procedures often result in inaccurate reporting, Defendants recklessly and knowingly fails to employ procedure to assure only ***maximally accurate*** consumer information is compiled and published in the consumer reports it sells to third parties for a profit.

77. As a direct result of each of Defendants' failure to maintain reasonable procedures to ensure accurate consumer reports, Plaintiff suffered as described hereinabove.

78. Upon information and belief, if each Defendant had not reported the inaccurate and materially misleading felonies on their respective consumer reports, Plaintiff would have been able to secure a job.

79. Consequently, because of each Defendant's inaccurate reporting, Plaintiff was denied multiple employment opportunities, suffered employment termination by Apollo, and was deterred from applying to QTL.

80. Aside from the financial losses, Plaintiff suffered emotionally.

81. Upon information and belief, each Defendant's inaccurate respective reports caused Plaintiff to suffer anxiety, aggravation, distress, and tumult.

82. Plaintiff was severely distressed by the ordeal he was put through by each Defendant.

83. When Plaintiff reviewed the inaccurate Trusted Report and Evident Report, Plaintiff felt mad, frustrated, and humiliated by the gross inaccuracies.

84. Plaintiff legitimately feared that he would not be able to provide for his family.

85. As a result of Defendants' violations, Plaintiff was unable to provide for himself and his family, and was forced to move into his mother and step-father's home along with his 13-year old son.

86. Plaintiff feels inadequate as a parent and a father, and feels shame and humiliation.

87. Each Defendant's actions have caused Plaintiff severe emotional distress, anxiety, and sleepless nights.

88. Plaintiff feared, and to an extent still fears, that each Defendant's inaccurate reporting may jeopardize his ability to provide for his family in the future.

89. Each Defendant's conduct, actions, and inactions caused Plaintiff to suffer actual damages, including, but not limited to, emotional distress which includes, mental anguish, embarrassment, stress, and anxiety.

90. Plaintiff continues to worry that this information will resurface and cause him additional harm into the future.

## COUNT I
### Trusted and Evident each Violated 15 U.S.C. § 1681e(b)

91. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

92. In the parlance of the FCRA, background reports are "consumer reports."

93. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

94. Trusted and Evident each violated 15 U.S.C. § 1681e(b) by failing to *establish* reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

95. Trusted and Evident each violated 15 U.S.C. § 1681e(b) by failing to *follow* reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

96. Trusted and Evident's respective failure to employ and/or follow reasonable procedures while preparing Plaintiff's information caused Plaintiff to suffer actual damages, including statutory and actual damages, as described herein.

97. Trusted and Evident's respective violations of the FCRA were willful. Therefore, Trusted and Evident are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

98. Alternatively, Trusted and Evident's respective violations of the FCRA were negligent. Therefore, Trusted and Evident are each individually liable to Plaintiff for statutory and actual damages. *See* 15 U.S.C. § 1681o.

99. In any event, Trusted and Evident are each liable for Plaintiff's reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

100. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

    a) Actual damages pursuant to 15 U.S.C. §§ 1681n-o;

    b) Statutory damages pursuant to 15 U.S.C. §§ 1681n-o;

    c) Punitive damages pursuant to 15 U.S.C. § 1681n;

    d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n-o;

    e) Any pre-judgment and post-judgment interest as may be allowed under the law; and

    f) Other and further relief as the Court may deem just and proper.

DATED: May 3, 2022

                                              */s/ Matthew P. Crimmel, Esq.*
                                              Matthew P. Crimmel, Esq.
                                              Matthew P Crimmel Esq. Attorney at Law PLLC
                                              1042 Greystone Circle
                                              Morgantown WV 26508
                                              matthewcrimmel@msn.com